Our second case is 24-1634 Houston Casualty Company v. Trident Construction Services, LLC. Before we get started, I want to welcome and thank United States District Judge Thomas Johnson from the Southern District of West Virginia for being with us this morning. Thank you so much, Judge, for joining us. Thank you. Happy to be here. Good morning, Judge Keene. Good morning. Mr. Rannick? Thank you, Your Honors. Good morning, and may it please the Court. This is a dispute about the scope of coverage under a CGL policy. There is not a dispute between the parties about whether there was an occurrence or whether there was property damage or, therefore, whether the policy itself was triggered. The question is, what is the extent of covered damage under this policy once it is triggered? And as to $295,000 of the claim, there should be no question about that either, and here's why. This is a case about water intrusion at a condominium building. HCC, the carrier, agreed to pay $91,000 for certain interior repairs following water intrusion from three severe weather events in Charleston, South Carolina. There was also defective construction that, combined with the weather events, caused the water intrusion, caused interior damage. Again, HCC agreed that the policy was triggered and paid $91,000 for certain interior damage. They also acknowledged that other portions may be covered to the extent they related to interior damage and asked Trident for further information. Trident gave that information, identified $295,000 that related to interior repairs, and never heard from HCC again about it. It was never rejected, rebutted, countered, never paid. And to this day, even after the lawsuit was filed and discovery was conducted, there is still nothing to rebut that that $295,000 relates to interior damage. And thus, even under HCC's coverage interpretation, which, as we all know, differs from Trident's, should be covered. How do you say that that $295,000 relates to the interior damage? So it was they were costs incurred in performing the interior repair. So there were certain categories of costs. How are they different, I guess, from the $90,000-plus that was paid without objection? The $91,000 were categories that were entirely relating to interior damage. The $295,000 was categories, some of which was interior, some of which was exterior. For example, dumpster rentals, permitting, certain aspects of the work that were necessary for the project as a whole. And so the question was, okay, dumpsters, sure, to the extent you're using those for interior damage, HCC says we should pay that. So Trident said, okay, let's tell you how much of each of these categories applied to interior versus exterior. And that's how they came to the $295,000. Now, if I understand your colleague on the other side, the response to that is we've got this blanket statement of charges related to the repair work, but nothing more. I mean, did you have to give anything more? Thank you, Judge. I don't believe that we did, because if we did, I assume they would have asked us for more and we could have provided it. During the deposition of the claims adjuster, he said we rely on the information that we get from our insured. The information they got from their insured was a pretty detailed breakdown of each of these categories and how much related to interior repair. Had they wanted more, they could have asked for it and they would have received it. But I don't believe anything more was required. It was the insurer's duty to investigate. And once we've brought the claim within coverage, I think if there's more information that they need, it's incumbent upon them to seek it. So what I would say is the primary issue today is the other $318,000 and whether that is covered under the policy. And the question is, of course, my friend and I have different interpretations of how coverage is determined here. Trident's position is once the policy is triggered, the insured has met its burden, and any element of the claim that is not covered will not be covered because of an exclusion, and it's the insurer's obligation to prove that an exclusion applies. Here, we say there is no applicable exclusion. Now, the one exclusion that was cited by HCC was exclusion M, and I'll confess I find this to be among the more impenetrable exclusions in a CGL policy. But it's purposeful. Let me stop you there. Before we get to the exclusion, you sort of just made a blanket statement that once coverage is triggered, that's the end of the story. But that doesn't mean that each element of a claim necessarily is encompassed by the coverage scope of the policy. And as I understand their principal argument is that the plain terms of the policy exclude the very claim that you are seeking to receive compensation for. I agree that is their version. We disagree. The case law in South Carolina distinguishes claims that are solely for property, for the defective construction, and claims. He did indeed, Your Honor. He did indeed, Your Honor. But South Carolina, if you look at the cases, if you look back to LJ v. Petunias, if you look at Newman, if you look at Crossman, and the cases cited by Crossman, the way South Carolina courts conduct this analysis is, is there cover damage under this policy? That's the first question. And they distinguish between cases where the only damage alleged is defective construction, and cases in which defective construction leads to property damage, interior resultant damage. And they find that when there is the latter, when there is both a defect and damage, the policy is triggered. And then it's the exclusions that apply to take defective construction out of coverage. And that's typically the your work exclusion, exclusion L or J6. Here, and this is why this case is different from any other case, this policy doesn't have those exclusions. They were removed by endorsement. And this is an issue of first impression. There is not a case construing a policy where these two exclusions were removed. Well, how do you reconcile the Crossman decision that talks about the definition of property damage as excluding coverage for faulty or defective work? Because the policy itself covers more than property damage. It covers damages because of property damage. And using the plain words, what does because of mean? Okay, let me back up. There are many interpretations of what because of means. It can mean either the only cause of, it can mean a cause of. Here we would say the costs incurred to perform the exterior repairs were incurred in part as a result of the damage that occurred in the interior as a result of the property damage. Because absent that property damage, no one would have known that there were defects. There would have been no liability that Trident would have faced to perform those repairs. However, once they were discovered, Trident now would face liability to perform the interior repairs and to fix whatever caused it. Those are damages because of property damages that HCCs insured would face. Therefore, they're covered under the policy unless they're excluded. And here there's no exclusion for defective construction. So that is how we conclude that the policy is triggered. First, it was triggered anyway regardless of the costs to repair the defective construction. We see trigger and South Carolina cases treat trigger as a binary proposition. The policy is either triggered and there's coverage or it is not and there is not. Once the policy is triggered, it becomes the insurer's responsibility to prove any applicable exclusion to take the claim or any part of it outside of coverage. Now, to dive into the exclusion and exclusion M. The purpose of this exclusion is to remove coverage for the loss of use of another's work caused by a defect in your work. In contrast, the your work exclusion, L or J6, removes coverage for the defects in your work itself, including when one part of your work damages another. But, and I would note here that all of this project is Striden's work because Striden was the general contractor and all of the work was performed on its behalf by subcontractors. So under the definition, the entire project is your work. But per the language of the policy, exclusion M doesn't apply for three reasons. First, exclusion M applies to property damage to impaired property or property that has not been physically injured. South Carolina law and Crossman, as Judge Diaz, you noted, makes clear that defective construction is itself not considered to be property damage. So exclusion M cannot apply to defective construction because that's not property damage to property, to impaired properties. It's not property damage under South Carolina law. With regard to the non-defective elements of the construction, it would apply only to the loss of use or reduced usefulness of these non-defective elements. And here, the non-defective elements, there was no loss of use. They remained in place until they were taken out and removed to the extent that they were during the repair process. And once it was taken out, then they had been physically injured and exclusion M wouldn't apply anyway. Finally, there's an exception to exclusion M that removes those losses that arise out of a sudden and accidental damage to your work after it has been put to its intended use. Well, that is what we have here. We have storms after the building was complete and occupied. That was the occurrence that triggered the coverage here. It was after the building was put to its intended use, it caused damage, and all of the work that followed arose out of that occurrence. So exclusion M is not applicable. And in the absence of any applicable exclusion, there is coverage. Doesn't your reading, though, of that language that includes after it's been put to its intended use, doesn't that negate the first subsection of exclusion M and make it superfluous? I don't believe it makes it superfluous, Judge Johnston. I think it limits its applicability, but I don't believe that there couldn't be an instance where property damage to impaired property occurs during construction or before the building is occupied. So I don't believe it renders it superfluous, but perhaps I'm not understanding and answering your question properly. Thank you. I'm happy to take any further questions that the Court has. This is not a question about the merits, but it struck me as odd that there's an allegation that the subcontractor in this project did defective work and it appears the same subcontractor was hired to repair the work and was paid again. Does that make sense? That doesn't make sense to me. And if you don't need to answer that, I just thought that was strange. It's a bit of an unusual circumstance, Judge. All right. We'll leave it at that. Thank you. Thank you very much. Mr. Haas. Good morning, Your Honors. May it please the Court, Kevin Haas from Clayton Co. on behalf of Houston Casualty Company. So this case is really not a complicated case. There have been a lot of decisions in South Carolina by the South Carolina Supreme Court that have addressed the various facts and circumstances, as we see here, a situation where you have both faulty workmanship and you have resultant damage. The resultant damage can be covered. The faulty workmanship is not. So the background of this case, the facts are pretty much agreed. Trident was the general contractor for the construction project. Houston Casualty issued an OSIP policy that covered Trident and the enrolled subcontractors. This is all fairly standard. The policy was a CGL policy. The insuring agreement provides that HCC would pay sums the insured becomes legally obligated to pay as damages because of property damage caused by an occurrence. There were three water events, weather events that caused water intrusion, damaging four units inside the condominium building. The owners of those four buildings demanded repairs. Trident agreed to repair the damage. But in addition, Trident decided that they would investigate the cause, figure out what was causing the water intrusion, and address it. So they turned to the two subcontractors who had done the exterior stucco and component work, and they asked those subcontractors to investigate and figure out what was causing the water intrusion. They did that. They confirmed that the water intrusion was being caused by faulty workmanship. The exterior stucco system and its components had been improperly installed. So the subcontractors repaired the interior units. They also repaired the exterior faulty workmanship. Houston Casualty paid Trident for the costs to repair the units, but Houston Casualty denied coverage for the costs related to the investigation of the cause of the damage, as well as the remediation of the faulty work itself. Where do you say the $295,000 that your colleague began with falls in those three buckets that you just described? Yes, Your Honor. So the $291,000 or so includes the $91,000 that was paid, and it's a compilation of figures that are in an email from Mr. Burrell, an employee of Trident, where he explains his point of view as to what constitutes interior costs. Because what had happened was, as a shorthand, HCC paid for interior damage, which were the units, but didn't pay for exterior damage, which was the faulty workmanship. So using that dichotomy, Mr. Burrell asserted that certain additional costs above and beyond the $91,000 constituted interior damage work. But if you look closely at the Burrell email, among the things that he seeks to recover as interior damage are the waterproofing, which is the exterior damage. It's actually part of the stucco system that was damaged by the very same faulty workmanship. Copings, downspouts, and sheet metal, which he says had to be removed so the sheathing and waterproofing could be repaired. So these are the get-to costs as we classify them. Building envelope consultant, the cost of discovery should be reimbursable. So, again, this is the effort to investigate from the exterior forward what was the cause of the water intrusion. So you're now explaining all of that here in court, and my next, I guess my question is, did you respond at all in that way to the email? There was not a formal response to the email. There was discussion about the email, and in that discussion, the conversation went from where that email had been to a discussion about why they wanted to recover the entirety of their claim based on the because of property damage caused by an occurrence argument that my friend provided a moment ago. But what HCC did do is they investigated by hiring an expert, a consultant, a person who is knowledgeable about construction projects and circumstances where, because this happens fairly commonly, that the exterior system will have a construction defect and will cause leaking from water intrusion, and that will then cause additional damage to other people's property, unit holders, et cetera. So HCC, Houston Casualty, hired a consultant expert at that. That consultant evaluated the entirety of the claim, and that consultant concluded that the only part that was actually property damage caused by an occurrence was the damage to the units themselves. Is that in the record? Yes, Your Honor. And did the district court grapple at all with that issue? Not at all. In the case, both parties moved for summary judgment. There were cross motions for summary judgment. The court had before it the full record, which included deposition testimony, other exhibits and such. We submitted an expert report on that very same consulting issue. Trident decided not to submit an expert report. So on that record, Judge Gergel, who has quite a lot of experience dealing with insurance coverage issues, construction defect coverage issues under South Carolina law, concluded that this case was precisely within the construct of Crossman, LJ, and Newman, which are the three South Carolina Supreme Court cases that have addressed similar factual circumstances and have concluded that faulty workmanship is not property damage. Faulty workmanship is not an occurrence. Faulty workmanship is not covered. So therefore, he agreed with our point of view that all you needed to provide coverage for was the damage to the interior units. You didn't have to provide coverage for the faulty workmanship itself or the costs that you incurred to investigate the faulty workmanship or the costs to get to the faulty workmanship, all of which do not constitute property damage and do not constitute an occurrence. Is it your view that, and I'm sorry to interrupt you, but is it your view that the argument that's being made this morning and I guess made in the briefs attempting to slice the salami, for lack of a better sort of metaphor, is the $291,000, which you say includes the $90,000 that you concede was covered, was that argument presented, this argument that is now attempting to distinguish between things that are outside of coverage and things that are related to coverage, was that distinction presented to Judge Garbo? I don't think it was. I think that Trident Below, just like here, put their eggs into arguments about first this because of argument that all damages that are because of property damage caused by an occurrence are covered. It doesn't matter whether some of those damages actually were because of property damage and some of them were not. And I think also the argument about the your work exclusion, how removing that somehow would negate the requirement to meet the insuring agreement, and the arguments about the impaired property exclusion, which were actually contrary to prior decisions by Judge Garbo. And I think that what happened was is that he did not accept any of those arguments and he concluded that they had not proved, which was their burden of proof, that the damages they were seeking to recover were damages because of property damage caused by an occurrence, which they were not. How did the insurer respond to the email that sets out these additional claims that your colleague says are covered by the policy? Well, I would say three different ways. One was there was a conversation among the lawyers about that email and about the claim and how there could be a potential resolution. And in the context of that conversation, the focus of that email was lost and the discussion turned solely to Trident wanting coverage for their entire claim on this because of property damage caused by an occurrence argument, which Houston Casualty was never going to buy. In addition, Mr. Burrell was deposed in the underlying case, and when he was deposed he was asked about what was the faulty workmanship damage, what was the unit damage, and he explained that the faulty workmanship was the entire stucco system, including the waterproofing. So there was an improper torquing of the screws that caused larger holes through all of it, and that then led to the water intrusion into the units. The third thing was, as I had mentioned earlier, Houston Casualty retained a consultant to investigate the loss in its entirety Houston Casualty also submitted an expert report in the case concerning the same issue. So the Burrell email was addressed in three or four different ways before Judge Gergel at the district court level. Well, I guess what I'm trying to get at is the argument seems to be, in the email anyway, that some portion of this work, which they admit had to do principally with repairing the faulty work, but some portion of the work also, for example, rental equipment, $20,086.59. They say, we request reimbursement for the pro rata share of the rental equipment not associated with the correction of the faulty work, and they say that that reimbursement amounts to $5,124.13. So that's their claim, that $15,000 of it they concede, although they also believe that they're entitled to that. But at a minimum, they say $5,000 is associated with repairing the units that were damaged. Why didn't that merit a response or at least a resolution by the district court, all of these associated claims as they've described them? Yes, Your Honor. As I had indicated previously, if you look carefully at that Burrell email, you can discern that his use of the word interior damage is a very vague term because he includes in his request for reimbursement as interior damage the waterproofing, which was part of the system that was damaged by the very same construction defect, the copings, the downspouts, and the sheet metal that they had to take off and the subcontractors had to take off in order to get to the faulty workmanship, as well as the building envelope consultant on the assertion, and this is a quote, the cost of discovery should be reimbursable. So his concept of interior damage is actually not interior damage. It's actually exterior damage. It's actually construction defect, faulty workmanship damage. And then he uses that term to do the multipliers that Your Honor has alluded to. Well, that's a great argument, but wasn't the district court required to resolve that? You say it wasn't. He says it was. Well, I think that the district court did resolve that because the district court had before it cross motions for summary judgment, and the district court had before it an expert report from Houston Casualty that described what constituted faulty workmanship damages, as well as the get to, the rip and tear to address the faulty workmanship damages, and he had nothing from the other side, notwithstanding that it was their burden of proof. So on cross motions for summary judgment, the district court can very clearly weigh the evidence and draw a conclusion that there isn't anything on the other side to try to prove what their burden is to prove. So I also understood that your argument with respect to this $290,000 plus in damages is that they waived that argument, and how did they do that? The point there is that below, in the trial court, they never drew that dichotomy. They never described that to Judge Gergel? They did not. They simply sought to recover the entirety of the loss on the because of property damage caused by an occurrence argument, followed up by the year at work exclusion argument and the impaired property exclusion argument, all of which were rejected. So because the court was rejecting the argument that they made that they were entitled to everything, not just the $91,000 that had been paid, it was all rejected based on the same reasoning that the because of property damage caused by an occurrence argument is contrary to established South Carolina Supreme Court law. The year at work exclusion argument is contrary to the construction of a policy, period. There's no basis in the law for that argument at all. And the impaired property exclusion argument ignored the policy language and ignored also prior decisions by Judge Gergel on the precise same issue and the precise same exclusion, and I think that's what occurred. Were the prior decisions in the same case? Not the same case. So he could rely on a prior decision in another case? That's what you're saying? Yes, Your Honor. Yes, Your Honor. So Judge Gergel held in the AMS versus Reynolds case. It was precedent, you're saying? Correct. Correct, sir. Correct. I thought you were getting at a prior ruling in this case. You make it sound like almost these cross motions for summary judgment were treated as a bench trial from my listening to your explanations here. In a way, in a way. But there's a difference between a bench trial and a cross motion for summary judgment. Yes, sir. From a procedural standpoint. Yes, sir. Yes, sir. No question. No question, but I think that You're dealing with a cross motion for summary judgment, not a bench trial. That is correct, Your Honor. Judge Gergel wasn't entitled to find disputed facts. That's correct, but if there was no support for one party's facts and there was support for the other party's facts, there is no dispute. So I'll just quickly. So in terms of the impaired property exclusion, I just wanted to talk about that briefly. So our position is that there's no property damage, no occurrence arising from faulty workmanship, so therefore there's no coverage for the faulty workmanship itself, for the investigation of it, for the repair of it, and for the costs to get to it under the cases that I cited, L.J. Newman and Crossman, as well as the Lacey decision from the district court. But Judge Gergel also relied on the impaired property exclusion, and the impaired property exclusion, the point of that in this context is that if you have property that has not been damaged, but it must be damaged in order to repair certain property, that there is no coverage for that based on the impaired property exclusion. And that's exactly what Judge Gergel held. He recognized that Trident was ignoring the disjunctive or in the main part of the policy, but he also recognized that they were misreading the sudden accidental exception. So the sudden accidental exception in the impaired property exclusion is saying that after your work's been put to use, if there's some sudden accidental event that damages that work, the exclusion doesn't apply. That's a different situation. And for that, you need to have loss of use, which there is not here. There needs to be physical injury to other property, which there was not here, because Crossman says faulty work is not physical injury. It's not property damage. So there was not that. And also the damage to the units was progressive. There was no sudden accidental event. It was progressive. There were multiple rain events that gave rise to the loss. Thank you, Your Honors. Thank you, Mr. House. Do you have some rebuttal? Thank you. Quickly, let me move through a couple of points. First, we disagree that the $295,000 included the original $91,000, and it's important for the Court to understand the timeline of the sequence of events here. Yes, HCC hired an expert. The expert was hired and issued his report before HCC issued its reservation of rights, agreeing to pay $91,000 and declining to rest. It's only after that that Chris Burrell sent his email about the $295,000. That was never sent to the expert. There was no further investigation by HCC, and the record is clear about that. The next part, there were questions about the cross motions for summary judgment, and I would just note that our motion was a motion for partial summary judgment. We were only asking for a ruling on the overall coverage question. Now, HCC moved for complete summary judgment, including on our bad faith claim, and we opposed it, saying, well, there's this $295,000 outstanding. There's definitely a dispute of fact about whether their nonpayment of that constitutes bad faith, and so we want to get trial on bad faith. And that argument was rejected because their motion was granted. The next part, it's important, and I didn't spend enough time on this, about trigger of coverage. And it is true that resultant damage constitutes property damage and therefore can be an occurrence, and defective construction cannot. But this is a question of trigger. So Crossman, the issue that they had before them is we've got multiple years of coverage, and we need to determine when was the occurrence that will implicate these various policies. And they said the time that the defective construction occurred doesn't constitute an occurrence. You've got to wait until it causes damage. Once it causes damage, you have an occurrence. And if you have property damage, the policy is triggered. There is no case in South Carolina that requires there be a separate occurrence for each element of the damage that is part of the claim. There just is not. A careful reading of Crossman, a reading of Newman, of LJ, they all say once you have both defective construction and property damage, the policy is triggered. There is coverage. And then the question is the exclusions. And as I mentioned before, there is no case where these two exclusions were removed. So this is a new issue. And with regard to Judge Gergel's prior decision in 2016, again, the year work exclusion was part of that policy. Also, this precise issue, again, I haven't been able to find the policy in question in that case. But our position on exclusion M is based on a literal reading of the terms in the policy. And for the reasons that I articulated in our briefs, it does not apply to any of the categories of damage that Trident seeks coverage for. Another thing that HCC has never been able to satisfactorily explain is the effect or the purpose of removing the year work exclusion from the policy. We say, well, if there is an exclusion and it takes coverage away, then the removal of that exclusion gives coverage back. Now, in the 30B6 deposition of HCC, the explanation was given that the removal of this exclusion makes clear that resultant property damage is covered. But this exclusion has nothing to do with resultant property damage. And its presence doesn't exclude resultant property damage. And so that's not a viable explanation. Do you have any authority for the proposition that the removal of an exclusion should play a role in the interpretation and reading of the policy? Do I have express authority? No, Your Honor. Outside of the myriad cases that talk about policies need to be interpreted based on their language and interpreted as a whole. And so when you have a specific endorsement that says we are taking this coverage or this exclusion away from the coverage, it has to mean something. All parts have to be given effect. And the only effect that can be given to the removal of an exclusion is giving that coverage back. And no satisfactory explanation has ever been given otherwise. Finally, I'd like to just discuss briefly the scope of the construction defects at issue here. My friend said that it involved the entire stucco system. We would disagree. It occurred during the installation of the stucco system. But as the lathe was being attached to the building for the stucco to then be attached to, the holes were drilled a little too big. Actually, there was not enough torque on the drills. And so the screws wallowed a little bit, which meant that their holes were slightly bigger than the screw through the water barrier. That allowed water behind the water barrier. That's the defect. So we disagree that it's the entire stucco system. It's just something that happened at the beginning, the outset of the installation of the stucco system. There's one last point I would like to make. And I'd like to draw the Court's attention to footnote four of the Crossman opinion, which says, if an insurer wishes to exclude a certain category of damage, it is incumbent upon the insurer to do so in clear and plain language. I would argue that to the extent exclusion M is the basis for excluding defective construction, that obligation has not been satisfied. And with that, if the Court has no further questions, I'm done. I appreciate your time. Are you asserting that in this dichotomy of damage versus construction defect, that there was some damage on the outside to the stucco system caused by the defect in the screws? No, Your Honor. We believe the stucco itself was not damaged. Okay. Thank you very much. Thank you all. We want to thank both counsel for their arguments this morning. We'll come down and preach you both on behalf of the Court and on behalf of Judge Johnson, who can't do that this morning. Judge, I want to thank you again for being with us. After we're done greeting counsel, we'll come back and conference the case. And with that, the Court stands adjourned.
judges: Albert Diaz, Robert B. King, Thomas E. Johnston